# United States Court of Appeals

## For the Eighth Circuit

_____

No. 23-3575

_____

United States of America

*Plaintiff - Appellee*

v.

Kira Kristina Zielinski

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: September 26, 2024
Filed: February 13, 2025

_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Kira Zielinski absconded with her minor child to Mexico with the intent of depriving her ex-husband of his parental rights. When Zielinski returned to the United States, she was indicted for international parental kidnapping. *See* 18 U.S.C.

§ 1204(a). Following a bench trial, the district court[1] found Zielinski guilty and sentenced her to 36 months' imprisonment. Zielinski appeals, arguing that the district court erroneously prohibited her from introducing evidence that she absconded with her child to protect him from sexual abuse by the father. Finding no reversible error, we affirm.

Zielinski argues that she was entitled to present evidence of the child's sexual abuse under 18 U.S.C. § 1204(c)(2), which provides an affirmative defense to international parental kidnapping if "the defendant was fleeing an incidence or pattern of domestic violence." Noting that Zielinski did not contend that she herself was a victim of domestic violence, the district court precluded Zielinski from introducing evidence of the child's abuse because it found that § 1204(c)(2) only applied if the defendant, not a third party such as Zielinski's child, suffered domestic violence that prompted the flight to safety. We review *de novo* the district court's interpretation of § 1204(c)(2). *See United States v. Mink*, 9 F.4th 590, 609 (8th Cir. 2021).

Zielinski contends that § 1204(c)(2) encompasses those situations where a third party alone suffers domestic violence and the defendant aids the third party in escaping that violence.[2] But Zielinski's reading stretches the plain text of the statute. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the

---

[1]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

[2]The only court to have considered the issue (besides the district court in this case) concluded that § 1204(c)(2) does *not* include defense of a third party. *See United States v. Malka*, 602 F. Supp. 3d 510, 541 (S.D.N.Y. 2022) ("[W]hile the [defendants] seem to contend they were 'rescuing' the [children] from some kind of alleged abuse, the plain statutory language indicates that the affirmative defense solely applies when '*the defendant*' himself or herself is 'fleeing an incidence or pattern of domestic violence' with the removed child." (emphasis in original)).

legislative purpose."). The statute makes no reference to domestic violence against a third party. Section 1204(c)(2) speaks only of the *defendant's* flight from domestic violence.[3]

If Congress had wanted to include defense of a third party in § 1204(c)(2), it easily could have done so. *See Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022) ("The Court may not replace the actual text [of a statute] with speculation as to Congress' intent." (internal quotation marks omitted)). As the Government points out, Congress could have included the phrase "rescuing another" in the statute. *Cf.* 18 U.S.C. § 752 ("Whoever rescues or attempts to rescue . . . ."). Or Congress could have provided that the defense applied if "the defendant was fleeing an incidence or pattern of domestic violence directed against the defendant or a family member." But Congress did not include those words even though, in other sections of the same statute, Congress specifically referenced third parties, including a "child." *See, e.g.*, 18 U.S.C. § 1204(c)(3) (stating that it shall be an affirmative defense to international parental kidnapping if "the defendant had physical custody of the child . . . and failed to return the child as a result of circumstances beyond the defendant's control"); *see also Bittner v. United States*, 598 U.S. 85, 94 (2023) ("When Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning."). "[R]espect for Congress's prerogatives as policymaker means carefully attending to the words it chose rather than replacing them with others of our own." *Murphy v. Smith*, 583 U.S. 220, 224 (2018). Since "the legislature says what it means and means what it says," *Castro-Huerta*, 597 U.S. at 642, we reject Zielinski's contention that § 1204(c)(2) includes defense of a third party.

The dissent asserts that the court's interpretation minimizes a central premise of the statute—the intimate connection between parent and child. *Post*, at 6. But

---

[3]The dissent contends that the court too narrowly interprets the word "flee" in this context. *Post*, at 5. But the court's focus is on the *who*—i.e., who is the victim of domestic violence. Section 1204(c)(2) references only *the defendant* and makes no reference to domestic violence against a third party.

our interpretation of the statute directly accounts for that central premise. Without § 1204(c)(2), a parent suffering from domestic violence faces a Hobson's choice—flee alone and leave the child behind, or out of love for the child, stay with the child even if that means the parent continues to suffer domestic violence. Section 1204(c)(2) explicitly seeks to prevent the latter situation by providing an affirmative defense to a parent who chooses to flee with the child, even if the domestic violence is *only* directed towards the defendant. On the other hand, accepting the dissent's interpretation of the statute would lead to unintended consequences—allowing defendants to "convert[] every child-kidnapping prosecution into a replay of the child-custody proceedings, in which the defendant would try to relitigate the domestic-relations case by showing that he or she really should have received custody." *United States v. Nixon*, 901 F.3d 918, 920 (7th Cir. 2018). The child-custody proceedings provide the opportunity for a parent to present evidence of a child's abuse so that the state court can make a determination that is in the child's best interests. "[T]he loser in a child-custody proceeding must accept the decision (subject to appeal within the state system) and may not spirit the child across an international border." *Id.* We conclude that the district court did not err in precluding Zielinski from introducing evidence of the child's sexual abuse under § 1204(c)(2).

Zielinski also argues that § 1204(c)(2) is void for vagueness and that the district court's interpretation violates the rule of lenity, which we review *de novo*. *See Mumad v. Garland*, 11 F.4th 834, 837 (8th Cir. 2021); *United States v. Brummels*, 15 F.3d 769, 771 (8th Cir. 1994). A statute is void for vagueness when its terms are "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *United States v. Birbragher*, 603 F.3d 478, 484 (8th Cir. 2010). The rule of lenity "applies only when a criminal statute contains a grievous ambiguity or uncertainty and only if, after seizing everything from which aid can be derived, the [c]ourt can make no more than a guess as to what Congress intended." *Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (internal quotation marks omitted). Here, the plain language of the statute is not grievously ambiguous or uncertain. Nor are its terms "so vague that men of common

intelligence must necessarily guess at its meaning." *Birbragher*, 603 F.3d at 484. Zielinski does not prevail simply because she proposes a different interpretation of the statute. Thus, the statute is not void for vagueness, and the district court's interpretation does not violate the rule of lenity.

Accordingly, we affirm the judgment of the district court.

KELLY, Circuit Judge, dissenting.

I disagree with the court's narrow conception of the word "flee" in this context. In my view, based on the ordinary meaning of the word and § 1204(c)(2)'s terms, the word "flee" here can apply when a defendant escapes domestic violence aimed at herself or her child. I respectfully dissent.

The key phrase in dispute is § 1204(c)(2)'s requirement that "the defendant was fleeing." Around the time Congress enacted § 1204(c)(2), Merriam-Webster's Collegiate Dictionary defined "flee" as "to run away often from danger or evil," or to "hurry toward a place of security." *Flee*, *Merriam-Webster's Collegiate Dictionary* (10th ed. 1993); *see Sanzone v. Mercy Health*, 954 F.3d 1031, 1040–41 (8th Cir. 2020) (explaining that a statute's undefined terms are given their ordinary meaning based on dictionary definitions at the time Congress enacted the statute); International Parental Kidnapping Crime Act, Pub. L. No. 103-173, 107 Stat. 1998 (1993). Similarly, another dictionary defined "flee" to mean to "[r]un away from or as from danger; take flight; hasten or run for safety or protection[;]" "[g]et safely away, make one's escape[;]" or "[w]ithdraw hastily, go away, leave." *Flee*, 1 *The New Shorter Oxford English Dictionary on Historical Principles* (Lesley Brown ed., 1993).

The government concedes that § 1204(c)(2) is available when the defendant claims she is the victim of domestic violence and "flees" with her child in an effort to escape an abusive partner. This affirmative defense recognizes that a parent has an inherently intimate connection with her child. Otherwise, there is no need for

§ 1204(c)(2): a parent who is subject to domestic violence could flee with or without taking her child. And notably, the availability of a § 1204(c)(2) defense is not contingent on whether the child faces any danger. *See* 18 U.S.C. § 1204(c)(2). On the flip side, nothing about § 1204(c)(2) requires the domestic violence to be targeted toward the defendant. Allowing a defendant to take her child when the defendant herself is subject to domestic violence, but not allowing a defendant to take her child when the child is the victim of domestic violence, simultaneously minimizes a central premise of the statute (the intimate connection between the defendant and her child) and adds a requirement (that the violence be directed toward the defendant), without a textual basis. Whether the defendant is trying to escape domestic violence targeted toward herself or her child, the defendant is still "fleeing" from domestic violence.

The court reasons that the statute does not reference domestic violence against "a third party" because it "speaks only of the defendant's flight from domestic violence." This collapses the requirement that the defendant be the one fleeing with the definition of domestic violence. I agree the statute requires the defendant, not anyone else, to flee. But as the district court and both parties agree, the definition of "domestic violence" readily includes violence against children. *See Violence, Domestic Violence*, Black Law's Dictionary (7th ed. 1999) (defining domestic violence as "[v]iolence *between members of a household*, usu. spouses; an assault or other violent act committed *by one member of a household against another*." (emphasis added)). In this way, children are not necessarily third parties, as they are expressly contemplated in § 1204(c)(2). If a defendant flees with a child due to domestic violence against the child, she is still fleeing an incidence or pattern of domestic violence. To the extent the court relies on *Malka*, 602 F. Supp. 3d at 541, the district court in that case did not decide whether a defendant could "flee" if her child was the target of domestic violence. *See generally id.* at 541–42. Instead, it simply found that the defendants were not "fleeing" because they travelled *into* the United States from Guatemala to rescue children from alleged domestic violence in New York. *See id.* at 520–21, 41–42. Thus, *Malka*'s finding that § 1204(c)(2) did not apply was not predicated on the fact that the alleged domestic violence was

directed toward the children rather than the defendants. *Id.* Instead, the facts in *Malka* showed the defendants were not fleeing as required under § 1204(c)(2) because, rather than trying to *escape* any domestic violence (whether aimed at the defendants or the children), the defendants were actively travelling thousands of miles *toward* the violence. *See id.*

The court also expresses concern about turning this type of "prosecution into a replay of the child-custody proceedings," quoting the Seventh Circuit's opinion in *Nixon*, 901 F.3d at 920. But *Nixon* raised this issue in a different context that more directly ran the risk of relitigating parental fitness. That case involved a defendant who, in the midst of state child custody proceedings, fled the country with her child and then attempted to expand § 1204(c)'s definition of "domestic violence" to encompass a wide array of emotional or financial abuse. *See id.* at 919. It was in this context that the court stated it "could not equate 'violence' with 'abuse' without converting every child-kidnapping prosecution into a replay of the child-custody proceedings, in which the defendant would try to relitigate the domestic-relations case by showing that he or she really should have received custody." *Id. Nixon*'s policy concern—though perhaps implicated to some degree by a reading of § 1204(c) that includes domestic violence targeting the child—is not invariably at play in all international parental kidnapping prosecutions: the statute is not limited to cases involving custody proceedings. *See* 18 U.S.C. § 1204(b)(2) (defining "parental rights" as "the right to physical custody of the child . . . whether arising *by operation of law*, court order, or legally binding agreement of the parties") (emphasis added); *United States v. Amer*, 110 F.3d 873, 878 (2d. Cir. 1997). And in any event, a policy concern, however valid, cannot override the statute's text. *See United States v. Flute*, 929 F.3d 584, 590 (8th Cir. 2019) ("Our task does not involve passing judgment on the wisdom of a given statutory provision or opining on how that statute may be used in the future.").[4]

---

[4]Moreover, *Nixon* never called into question that § 1204(c) covered situations involving domestic violence targeted at the child, despite the defendant in its case alleging that very situation. *See Nixon*, 901 F.3d at 919. In a factually similar case, the Tenth Circuit also did not raise the issue. *See United States v. Rizvanovic*, 572

In short, I agree that it is the defendant who must do the "fleeing" for the statutory defense to apply. And the parties here agree that "domestic violence" includes violence against children. But I see nothing in the text of § 1204(c)(2) that limits the defense to defendants who are "fleeing" an incidence or pattern of "domestic violence" aimed only at the defendant herself—a limitation that would have been simple to include. By foreclosing the affirmative defense at the onset, the district court precluded Zielinski from making any showing that she was fleeing domestic violence and prevented her from presenting a complete defense. *See United States v. Holmes*, 413 F.3d 770, 774 (8th Cir. 2005) ("'[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense,' which includes the right to present testimony of witnesses that is material and favorable to their defense and complies with the rules of evidence." (alteration in original) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).

I would reverse and remand for further proceedings.

_____

F.3d 1152, 1153–54 (10th Cir. 2009) (considering a case where the defendant based his § 1204(c)(2) defense on domestic violence targeted towards the minor rather than the defendant himself, without flagging the issue of whether the defense categorically does not apply in such circumstances).