# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

v.

No. 06-5016

DONOVAN LAMONT WALLACE,
　　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of West Virginia, at Elkins.
Robert E. Maxwell, Senior District Judge.
(2:04-cr-00019-REM)

Argued: December 7, 2007

Decided: February 12, 2008

Before NIEMEYER and GREGORY, Circuit Judges,
and Henry F. FLOYD, United States District Judge
for the District of South Carolina, sitting by designation.

Affirmed by published opinion. Judge Gregory wrote the opinion, in
which Judge Niemeyer and Judge Floyd joined.

## COUNSEL

**ARGUED:** Brian Joseph Kornbrath, Federal Public Defender,
Clarksburg, West Virginia, for Appellant. Stephen Donald Warner,
Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Elkins, West Virginia, for Appellee. **ON
BRIEF:** Sharon L. Potter, United States Attorney, Wheeling, West
Virginia, for Appellee.

**OPINION**

GREGORY, Circuit Judge:

The appellant, Donovan Lamont Wallace ("Wallace") was tried and convicted of conspiracy to distribute cocaine and crack cocaine in violation of 21 U.S.C. §§ 841 (b)(1)(A) and 846 (2004) (Count 1), possession with intent to distribute crack cocaine within 1,000 feet of a playground in violation of 21 U.S.C. §§ 841(b)(1)(B) and 860 (2004) (Count 2)[1], possession of a firearm in furtherance of a drug trafficking crime in violation of 21 U.S.C. § 924 (c)(1)(A) (2004) (Count 3), and possession of a firearm with an obliterated serial number in violation of 18 U.S.C. §§ 922(k) and 924 (a)(1)(B) (2004) (Count 4). Wallace was sentenced to 248 months in prison.

Wallace timely appeals his sentence, arguing that (1) the district court committed reversible error by denying his motion for a mistrial and by not providing an immediate curative instruction to the jury after a Government witness violated an *in limine* agreement, (2) there is insufficient evidence to support his conviction for possession of a firearm with an obliterated serial number, and (3) the district court sentence of 248 months was unreasonable.

After a thorough review of the record, we affirm the district court's judgment.

I.

On April 23, 2004, the Upshur County, West Virginia, 911 Communications Center received a call indicating that an incident of domestic violence was taking place at the Valley Green Apartment complex located near Buckhannon, West Virginia. Two Buckhannon police officers arrived at the scene, and while they waited for their counterparts from the Upshur County Sheriff Department to join

---

[1] After the verdict, Wallace filed a motion for acquittal as to Count 2 of the indictment, arguing that the Government had failed to prove an essential element of the crime. The district court agreed and reduced Wallace's conviction as to Count 2 to the lesser included offense of possession of more than five grams of crack cocaine with intent to distribute.

them, the officers received information that a maroon minivan with two black males was leaving the apartment complex. Shortly thereafter, the officers stopped an erratically driven maroon van, and found two occupants in the van — Wallace, the driver, and his passenger Kenneth Key.[2] Wallace gave the police permission to search the van, and during that search, the officers found three loaded pistols, including a Taurus .9 millimeter semi-automatic with an obliterated serial number, drugs, and cash. After taking both men into custody, the police interviewed Tina Rodrigue, who alleged that Wallace had "choked her" and "slammed her" against a van during a "domestic scuffle." (J.A. 67.) Prior to trial, the Government and Wallace agreed to exclude the details of the domestic violence incident at trial.

At trial, the Government presented several witnesses, including Rodrigue, who provided evidence that Wallace was a crack cocaine dealer. Rodrigue testified that upon meeting Wallace in 2004, Rodrigue began driving Wallace from West Virginia to Ohio and Pennsylvania once a week to pick up crack cocaine. Eventually the frequency of the trips increased to two to three times a week. Wallace and Rodrigue would travel in vehicles rented in Rodrigue's name and paid for by Wallace. In addition to serving as Wallace's driver, Rodrigue would sell the crack cocaine to buyers at the Valley Green Apartment complex. Four other witnesses testified at trial that they bought cocaine from Wallace.

The jury convicted Wallace on all four counts of the indictment. Wallace was sentenced to 188 months as to Counts 1 and 2 and 27 months as to Count 4, all to run concurrently. Wallace also received a 60 month sentence for Count 3 (use of firearm in furtherance of a conspiracy), to run consecutive to the other counts. Thus, the total effective sentence for Wallace was 248 months.

---

[2]After pleading guilty to possession of a firearm in furtherance of a drug related crime, in violation of 18 U.S.C. § 924(c), and agreeing to cooperate with the Government in its prosecution of Wallace, Key contradicted his grand jury testimony (which supported the Government's version of the events) at trial. As a result, Key was indicted and pled guilty to perjury for his testimony at trial.

We will now address each of Wallace's claims in turn.

## II.

Wallace argues that the district court committed reversible error by not granting a mistrial or providing an immediate curative instruction to the jury after a Government witness violated an *in limine* agreement not to mention any details surrounding the domestic violence incident involving Wallace and Rodrigue. We review both a district court's denial of a motion for a mistrial and its decision regarding a curative instruction for an abuse of discretion. *See United States v. Dorlouis*, 107 F.3d 248, 257 (4th Cir. 1997) (holding that "denial of a defendant's motion for a mistrial is within the sound discretion of the district court and will be disturbed only under the most extraordinary of circumstances."); *United States v. Helem*, 186 F.3d 449, 454 (4th Cir. 1999) ("Decisions as to whether to give an instruction and the content of any jury instruction are reviewed for abuse of discretion."). An abuse of discretion exists if ". . . the defendant [can] show prejudice; no prejudice exists, however, if the jury could make individual guilt determinations by following the court's cautionary instructions." *United States v. Dorsey*, 45 F.3d 809, 817 (4th Cir. 1995).

Prior to trial, the parties agreed that "reference to the [domestic] incident at Valley Green Apartments would be limited to either a domestic incident, a fight, or an argument" because any further discussion would clearly be "more prejudicial than probative . . ." (J.A. 84.) Despite cautioning its witnesses not to discuss the incident, the following exchange took place between the Government and a police officer who was on the scene the night of the crime:

> AUSA:        And who did you — did you speak with anyone there?
>
> Officer:     I did. I made contact with Tina Rodrigue. She advised me that she had been in a domestic scuffle with Mr. Wallace. He had choked her and slammed her into the side of the van—

(J.A. 67.) Wallace's counsel immediately objected to the officer's comment on the basis of relevancy, which the court sustained. During the first break in the proceedings after the officer's statement, Wallace asked the court to declare a mistrial or in the alternative, to provide a curative instruction to the jury. The court did not grant or deny the motion, but did provide a curative instruction to the jury as a part of its final jury instructions.[3]

Wallace argues that the officer's description of the domestic violence incident was "highly inflammatory", non-probative, and "highly prejudicial." (Appellant's Br. 12.) The Government responds that Wallace's argument is without merit since (1) Wallace did not immediately ask for a curative instruction, (2) when Wallace did ask for the instruction, the court granted his request, adding a curative instruction into the court's final jury instructions, and (3) the final curative instruction was appropriate.

We agree with the Government. There is no evidence that the statement by the officer was purposefully elicited by the Government and the jury instructions clearly required the jury to disregard that portion of the officer's testimony. In addition, the Government correctly points out that if Wallace wanted an immediate curative instruction, he should have asked the court for one, instead of waiting for the first break. Thus, we find that the district court did not abuse its discretion in denying Wallace's motion for a mistrial or by not providing an immediate curative instruction.

---

[3]The following curative instruction was provided to the jury:

> The defendant is not on trial for any alleged domestic violence incident that allegedly took place at the Valley Green Apartments in Buckhanon, West Virginia on April the 23rd, 2004. You are instructed not to use these allegations against the defendant when deciding the guilt or innocence to the charges pending in this indictment.

(J.A. 270.)

III.

A.

Wallace also argues that there is insufficient evidence to support his conviction for possession of a firearm with an obliterated serial number. Before addressing the substance of Wallace's claim, we must determine whether Wallace's failure to raise his insufficiency of evidence claim at the trial level via a Fed. R. Crim. P. 29 ("Rule 29") motion for a judgment of acquittal precludes his appeal of this issue here, and if the Government's failure to raise a preclusion defense prevents us from considering that issue.[4]

Despite not filing a Rule 29 motion at the trial level, Wallace argues that we should reverse his conviction for possession of a firearm with an obliterated serial number due to insufficiency of evidence. The Government argues that any review of Wallace's claim is improper at this stage because (1) "[a]n issue that was never raised before the trial court cannot really be *reviewed*," (italics in original) and (2) "[i]t should be presumed that a District Judge would [have] use[d] Rule 29 on its own if faced with such insufficient evidence that substantial rights were effected." (Appellee's Supplemental Br. 4.)

The Supreme Court's holding in *United States v. Olano*, 507 U.S. 725, 732 (1993), reaffirmed in *United States v. Cotton*, 535 U.S. 625, 631-33 (2002), and reiterated by published opinions in this Circuit[5] provides us with clear guidance with respect to this issue. In *Olano*,

[4]After the parties submitted their initial briefs, we asked them to file supplemental briefs addressing these two issues.

[5]*See e.g.*, *United States v. Higgs*, 353 F.3d 281, 324 (4th Cir. 2003) (review of a defendant's constitutional claim for "plain error" was proper despite the fact that he had not raised the claim at the trial court level); *United States v. Carter*, 300 F.3d 415, 428-29 (4th Cir. 2002) ("Because no defendant raised this argument before the district court, our review is for plain error."); *United States v. Stevens*, 817 F.2d 254, 255 n.1 (4th Cir. 1987) (holding that since "defendant made no motion for [a Rule 29] judgment of acquittal . . . our examination is technically limited to determining whether or not manifest injustice would occur" (citing to *Lockhart v. United States*, 183 F.2d 265 (4th Cir. 1950) (per curiam))).

the Court flushed out the meaning of Fed. R. Crim. P. 52(b), which reads: "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." The Court interpreted Rule 52(b) to mean that "[i]f a legal rule was violated during the district court proceedings, and if the defendant did not waive the rule, then there has been an 'error' within the meaning of Rule 52(b) despite the absence of a timely objection." *Olano*, 507 U.S. at 733-34. However, the Court noted that Rule 52(b) is "permissive, not mandatory," and as a result, even "[i]f the forfeited error is 'plain' and 'affects substantial rights,' the court of appeals has authority to order correction, but is not required to do so." *Id.* at 735.

The *Olano* Court stated that courts of appeal should exercise the discretion conferred by Rule 52(b) when a "miscarriage of justice would otherwise result." *Id.* at 736 (internal citation marks and citations omitted). "[T]he term 'miscarriage of justice' means that the defendant is actually innocent." *Id.* (citation omitted). However, if the actual guilt or innocence of a defendant is not involved, then our discretion should only be exercised to "correct a plain forfeited error affecting substantial rights if the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (citation omitted). Because Wallace's insufficiency of evidence claim involves his guilt or innocence, *Olano* clearly allows us to review it for plain error (despite the inefficient nature of proceeding in such a manner).

## B.

In order for Wallace to prove that the jury's decision constituted plain error, (1) there must be an error; (2) the error must be plain, meaning obvious or clear under current law; and (3) the error must affect substantial rights. *United States v. Olano*, 507 U.S. 725, 732-34 (1993). Even if these criteria are met, the error will not be noticed unless it seriously affects the fairness, integrity, or public reputation of the proceedings. *Id.* at 736. We now turn to Wallace's insufficiency of evidence claim.

Wallace was convicted of violating 18 U.S.C. § 922(k) which states:

> (k) It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any

firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

Wallace argues that there was not substantial evidence to support his conviction under this statute because the jury was not presented with evidence that the firearm was transported or shipped in interstate commerce. Wallace contends that the facts, as taken in the light most favorable to the Government provide: Wallace was arrested in West Virginia while driving a rental van, a pistol was seized from the van, the rental van was obtained from a West Virginia car rental agency, and Tina Rodrigue only saw Wallace's firearms on the day of the arrest. In addition, although Rodrigue drove Wallace from West Virginia to Ohio and Pennsylvania, she did not see the pistol during any of those trips. Finally, Wallace states that there is no evidence in the record as to where the pistol in question was manufactured.

The Government argues that there is strong circumstantial evidence "that the transient appellant caused the firearm to travel in interstate commerce." (Appellee's Br. 13.) Specifically, the Government points to the fact that (1) Wallace was not from West Virginia, (2) he stayed in hotels and with friends during his visits to West Virginia, and (3) during the relevant time period, Wallace had driven from West Virginia to Pennsylvania and/or Ohio, two to three times a week. The Government believes that these facts combined with the engravings on the firearm itself ("MFG. MIAMI, FL") provide substantial evidence to support the jury's judgment. Nevertheless, the Government recognizes that because the pistol is not a part of the appellate record[6] and no witness at trial ever discussed the markings on the gun, remand may be necessary so that the district court can "make a record of the markings engraved into the gun, showing that it was manufactured outside of West Virginia." (Appellant's Br. 13.) In addition, while it is undisputed that the jury had access to the gun during delib-

---

[6]The district court ordered that the gun be turned over to the United States at the conclusion of the trial.

erations, the Government candidly admits that there was no testimony on the issue of where the gun was manufactured.[7]

Based on the circumstantial evidence presented to the jury regarding Wallace's whereabouts and Wallace's admission at oral argument that the gun was engraved with the words "MFG:MIAMI, FL"[8], we find no error in the jury's decision.[9] Because we find no error, we need not address the remaining prongs of the plain error analysis.

IV.

Finally, Wallace contends that the district court's guideline sentence of 248 months was unreasonable because the combined statutory minimum sentence of fifteen years, or 180 months, was greater than necessary to satisfy 18 U.S.C. § 3553(a). Since Wallace does not point out any procedural improprieties in his sentence, we limit our review to the substantive reasonableness of Wallace's sentence under an abuse of discretion standard. *United States v. Gall*, 128 S.Ct. 586, 597 (2007). In doing so, we must consider the "totality of the circum-

---

[7]The Government contends that Kenneth Key was supposed to testify that he had personal knowledge that Wallace carried the gun across state lines. However, as stated above, Key lied on the stand, resulting in his conviction for perjury.

[8]The following exchange at oral argument is most relevant:

Court: "Do you concede that . . . there is sufficient evidence that [the gun] was manufactured in Florida? It's a simple question."

Wallace: "A rational finder of fact could conclude that the weapon was manufactured in Miami, FL."

[9]The Government did not raise a preclusion argument in its brief. It contends that its failure to raise the issue does not prevent preclusion because Wallace failed to file a Rule 29 motion, and the district court did not raise the issue sua sponte. In addition, it contends that we should preclude Wallace's claim because appellate review will not improve the efficiency of the rules of criminal procedure. *See* Fed. R. Crim. P. 2 ("These rules are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay."). Because we find that the jury committed no error, we need not reach this issue.

stances", *Gall*, 128 S.Ct. at 597, including "the extent to which the sentence . . . comports with the various, and sometimes competing, goals of § 3553(a)." *United States v. Moreland*, 437 F.3d 424, 433 (4th Cir. 2006).

Since the district court's sentence is well within the guideline range, the sentence is "presumptively reasonable." *United States v. Montes-Pineda*, 445 F.3d 375, 379 (4th Cir. 2006). *see also United States v. Rita*, 177 Fed. Appx. 357, 358 (4th Cir. 2006), *aff'd*, 127 S.Ct. 2456, 2462 (2007). Wallace argues that the 248 month guideline sentence imposed by the district court is unreasonable because the minimum statutory sentence of 180 months was "clearly sufficient, but not greater than necessary, to satisfy the statutory purposes of sentencing." (Appellant's Br. 18.) Thus, during sentencing, Wallace asked the court to consider a downward variance under *Booker* because of his youth (29 years old), limited criminal history, and the brief time frame within which the relevant conduct took place. The district court denied Wallace's request.

Based on the totality of the circumstances, we conclude that the district court did not abuse its discretion in imposing a 248 month sentence on Wallace. The PSR calculated the guideline range for Counts 1, 2, and 4 as 188-235 months. As to Count 3, the guideline sentence was 60 months, and per the relevant statute, it had to be imposed consecutive to the sentence as to the other counts. Thus, the total guideline range was 248-295 months. After considering the guideline range and the § 3553(a) factors, the district court sentenced Wallace to 188 months for Count One, 188 months for Count Two, and 27 months as to Count Four, all of which would run concurrently. As to Count Three, the district court imposed the guideline sentence of five years, to run consecutive to the other counts. Thus, the district court's overall sentence of 248 months was the minimum possible guideline sentence. This sentence clearly was not unreasonable, and as such, we affirm the district court's decision.

V.

Based on the reasoning above, the district court's judgment is affirmed.

*AFFIRMED*