**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-5040**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CARLOS B. GUZMAN CRUZ, a/k/a Gato,

Defendant - Appellant.

**No. 09-5049**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOSE M. AGUILAR ORANTES, a/k/a Santos, a/k/a Psychie,

Defendant - Appellant.

**No. 09-5057**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DENNIS L. GIL BERNARDEZ, a/k/a Negro, a/k/a Big Homie, a/k/a Dopre, a/k/a Pando,

Defendant - Appellant.

No. 10-4773

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CARLOS B. GUZMAN CRUZ, a/k/a Gato,

Defendant - Appellant.

No. 10-4774

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOSE M. AGUILAR ORANTES, a/k/a Santos, a/k/a Psychie,

Defendant - Appellant.

No. 10-4775

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DENNIS L. GIL BERNARDEZ, a/k/a Negro, a/k/a Big Homie, a/k/a Dopre, a/k/a Pando,

2

                    Defendant - Appellant.

_____

Appeals from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Liam O'Grady, District
Judge.  (1:09-cr-00216-LO-1; 1:09-cr-00216-LO-2; 1:09-cr-00216-
LO-3)

_____

Submitted:  June 30, 2011                 Decided:  July 18, 2011

_____

Before KING, DUNCAN, and KEENAN, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

Gregory Todd Hunter, Arlington, Virginia; Alan H. Yamamoto,
Alexandria, Virginia; Craig W. Sampson, BARNES & DIEHL, PC,
Chesterfield, Virginia, for Appellants.  Neil H. MacBride,
United States Attorney, Patricia Haynes, Zachary Terwilliger,
Assistant United States Attorneys, Lanny A. Breuer, Assistant
Attorney General, Greg D. Andres, Acting Deputy Assistant
Attorney General, J. Campbell Barker, Criminal Division, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

3

PER CURIAM:

In these consolidated appeals, Dennis L. Gil Bernardez and Jose M. Aguilar Orantes appeal their sentences for, and Carlos B. Guzman Cruz challenges his conviction of offenses arising from, three shootings on October 6, 2008, in Reston, Virginia, and the subsequent effort to dispose of the gun used in the shootings. We affirm the sentences imposed on Bernardez and Aguilar Orantes, and we affirm Cruz' conviction. We also affirm the district court's denial of the Appellants' motion for a new trial based on newly discovered evidence.

The government's evidence at trial established that Bernardez was the leader of the Normandie Locos Salvatrucha (NLS), a clique of the Mara Salvatrucha (MS-13) gang in northern Virginia. Aguilar Orantes was a member of the NLS living in northern Virginia. Cruz was a member of the NLS living in Richmond, Virginia. The shootings were preceded by an attack on David Kuk, a former member of the rival 18th Street gang, by MS-13 member Antonio Urrutia Barrerra and others traveling in a Ford Explorer driven by Jose Aguilar Orantes. That was followed by an attack on Aguilar Orantes and his girlfriend by Kuk and his friend Dalton Beck, a former Crips gang member.

On Monday, October 6, 2008, Kuk was with Beck and Malcom Wilson at Freetown Court. Aguilar Orantes, Barrera, and Dennis Gil Bernardez walked up to Kuk, Beck, and Wilson. As

4

they approached, Bernardez asked Aguilar Orantes in Spanish, "Which ones?" Aguilar Orantes pointed to Kuk and Beck. Bernardez drew a handgun and pointed it at Beck, who fled. Bernardez fired at Beck but missed him, although the bullet went through his sweatshirt.

Bernardez then shot Kuk multiple times while Kuk was trying to run away. Wilson held up his hands and said, "I am not in their gang, I have no problem with you." Bernardez started to walk away, but then said to Wilson, "I can't leave any evidence." Bernardez shot Wilson at least twice. Kuk and Wilson suffered serious injuries, but survived.

Jorge Palacios, a former MS-13 member turned FBI informant in Richmond, Virginia, testified at trial that, before and after the shootings, he made audio and video recordings of his conversations with Cruz, who had previously sold him guns from northern Virginia which had been used by MS-13 members in crimes in northern Virginia. Palacios told Cruz he had connections who could take guns used in shootings out of the country.

On October 6, 2008, Cruz told Palacios he wanted to buy a "clean" gun to take to northern Virginia to exchange for two guns that had been used in crimes there. On October 7, Cruz called Bernardez in northern Virginia. Palacios recorded Cruz's half of the conversation, which concerned the Monday, October 6

5

shootings, and the need to get rid of a gun that had been used in more than thirteen shootings. On October 9, 2008, Palacios Cruz asked Palacios if he had checked the news coverage of Monday's shootings.

On October 17, 2008, Cruz and another person went to northern Virginia and brought Barrera, who was present when Bernardez shot Kuk and Wilson, to Richmond to stay in a safe house, a hotel room Cruz rented. That evening, Barrera was involved in stabbing a rival gang member.[1] The next day, Cruz called Bernardez and they agreed that, because of the stabbing, the gun deal would be delayed.

On October 31, 2008, Cruz brought the guns to Richmond from northern Virginia. The next day, November 1, 2008, Palacios first went to the safe house without any surveillance equipment to see the guns. Cruz held up one of the guns and told him "the gun had been used in Monday's shooting." Palacios then met with an FBI agent and returned to the safe house later that day to buy the two guns. A firearm and ballistics forensic expert testified at trial that the bullets and bullet jackets found at the scene of the shootings were fired from one of the guns that Palacios bought from Cruz, a .357 magnum revolver.

---

[1] Barrera was separately prosecuted for the stabbing and for another shooting in northern Virginia.

None the defendants moved for acquittal under Fed. R. Crim. P. 29. Bernardez and Aguilar Orantes were convicted of conspiracy to commit murder in aid of racketeering, attempted murder in aid of racketeering, assault with a dangerous weapon in aid of racketeering, and violations of 18 U.S.C. § 924(c) (2006). Aguilar Orantes was acquitted of the assault and attempted murder of Wilson. Cruz was convicted of being an accessory after the fact to attempted murder in aid of racketeering and assault with a dangerous weapon in aid of racketeering.

Bernardez was sentenced to a total of 960 months' imprisonment, which included sentences of ten years on Count 9, and twenty-five years on Counts 10 and 11, all consecutive to the sentences on the remaining counts and to each other, as required under 18 U.S.C. § 924(c) (2006). Aguilar Orantes received a total sentence of 660 months, which included consecutive sentences of ten years for Count 9 and twenty-five years for Count 11. Cruz was sentenced to a total of 144 months' imprisonment. Bernardez and Aguilar Orantes argued unsuccessfully at their joint sentencing hearing that the § 924(c) sentences could run concurrently.

Six months after they were sentenced, Appellants moved for a new trial under Fed. R. Crim. P. 33 based on newly discovered evidence. They alleged that Sergio Gerardo Amador, a

7

government witness who testified early in the trial about MS-13's racketeering activities, had given false testimony when he said he fatally shot Melvin Reyes, a member of a rival gang. The new trial motion was based on information that another incarcerated MS-13 member, Jose Enrique Gordillo Portocarrero, believed that Amador had falsely claimed to be involved in Reyes' murder. After a hearing, the district court determined that Gordillo had confused the Reyes murder with another murder, that his information was inadmissible hearsay that could not necessitate a new trial, and that the government had presented overwhelming evidence of racketeering activity even without Amador's testimony. The motion for a new trial was denied.

In this appeal, Bernardez and Aguilar Orantes contend that § 924(c) does not require consecutive sentences for a "single use," as they characterize the shots fired at Kuk, Wilson, and Beck. They rely on dicta in United States v. Camps, 32 F.3d 102, 106-07 (4th Cir. 1994) (accepting for purposes of the case, but not adopting, the government's position that multiple concurrent § 924(c) sentences arising from simultaneous offenses was not error). However, their position is at odds with Deal v. United States, 508 U.S. 129, 135 (1993) (holding that a second or subsequent § 924(c) conviction is any such conviction after the first conviction, without regard to whether the offenses occurred in a single or separate incidents), and

8

United States v. Higgs, 353 F.3d 281, 333-34 (4th Cir. 2003) (holding that multiple consecutive sentences were appropriate where three victims were shot and killed in one incident).[2]

Section 924(c)(1)(A) provides that, "[e]xcept to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law," any person who violates § 924(c) is subject to a mandatory minimum sentence of five years, § 924(c)(1)(A)(i), or seven years if the firearm is brandished, § 924(c)(1)(A)(ii), or ten years if the firearm is discharged, § 924(c)(1)(A)(iii). Aguilar Orantes and Bernardez argue that the "except" clause means that, when a defendant is subject to a mandatory minimum sentence under more than one subsection of § 924(c), the lower sentence should be concurrent with the higher sentence. They rely on decisions that have interpreted § 924(c) in this manner but are no longer good law, principally United States v. Williams, 558 F.3d 166 (2d Cir. 2009), abrogated by Abbott v. United States, and Gould v. United States, 131 S. Ct. 18 (2010) (hereafter Abbott).

The Supreme Court held in Abbott that a defendant is subject to a mandatory minimum sentence for a § 924(c) conviction even if he also receives a higher mandatory minimum

---

[2] The government suggests that Aguilar Orantes and Bernardez are challenging their multiple § 924(c) convictions, as well as their sentences. However, they do not make that argument.

sentence on another count of conviction. Abbott, 131 S. Ct. at 23. Although Abbott and Gould each had only one § 924(c) conviction, the Supreme Court rejected the reasoning in Williams and the other cases on which Aguilar Orantes and Bernardez rely. The Supreme Court held that the "except" clause simply requires the sentencing judge to impose the highest applicable sentence under § 924(c)(1)(A), rather than stacking sentences under several subsections for one § 924(c) conviction, and "furnishes the same no-stacking instruction for cases in which § 924(c) and a different statute both punish conduct offending § 924(c)." Id. at 30. Thus, the district court did not err when it imposed consecutive sentences for Bernardez' and Aguilar Orantes' multiple § 924(c) convictions.

Cruz contends that the evidence was insufficient to support his convictions for accessory after the fact. To prove that Cruz was an accessory after the fact as charged in Counts 13 and 14, the government had to prove (1) that Cruz knew that Bernardez or Aguilar Orantes had committed the offenses charged in Counts 3-5 and 6-8; (2) that Cruz received, relieved, comforted, or assisted one or both of them; and (3) that Cruz did so in order to hinder or prevent their apprehension, trial, or punishment.

Although Cruz did not move for a judgment of acquittal under Rule 29 at trial, generally, a jury's verdict "must be

10

sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942); see United States v. Perkins, 470 F.3d 150, 160 (4th Cir. 2006). The court considers both circumstantial and direct evidence, drawing all reasonable inferences from such evidence in the government's favor. United States v. Harvey, 532 F.3d 326, 333 (4th Cir. 2008). In evaluating sufficiency of the evidence, this court does not reweigh the evidence or reassess the factfinder's determination of witness credibility, United States v. Brooks, 524 F.3d 549, 563 (4th Cir. 2008), and "can reverse a conviction on insufficiency grounds only when the prosecution's failure is clear." United States v. Moye, 454 F.3d 390, 394 (4th Cir. 2006) (en banc) (internal quotation marks omitted).[3]

Cruz argues first that the evidence did not show that he knew who was involved in the shootings on October 6, 2008, or that the gun he sold to Palacios on November 1, 2008, was the gun used in the October 6 shootings. He also argues that the district court instructed the jury that one of the three elements the government had to prove was that the crime of

---

[3] The government asserts that, because Cruz did not move for a directed verdict in the district court, review is for plain error. United States v. Wallace, 515 F.3d 327, 331-32 (4th Cir. 2008). We conclude that, under either standard of review, the convictions may be affirmed.

11

attempted murder in aid of racketeering or the assault with a dangerous weapon was committed by both Bernardez and Aguilar. With respect to the latter claim, it is well-established that "where an indictment charges in the conjunctive several means of violating a statute, a conviction may be obtained on proof of only one of the means." United States v. Simpson, 228 F.3d 1294, 1300 (11th Cir. 2000). Therefore, the government could prove this charge by showing that Cruz knew either Bernardez or Aguilar Orantes committed the crime and that he acted to help either of them avoid prosecution afterward.

Palacios' testimony, supported by cell phone records and his recorded conversations with Cruz, established that, both before and after the October 6, 2008, shootings in Reston, Cruz was in regular contact with Bernardez and that Cruz talked to Bernardez on October 7, 2008, the day after the shootings. The number of calls between Cruz and Bernardez escalated significantly after October 6. Moreover, Cruz drove to northern Virginia to pick up Barrera, who was present at the October 6 shootings, and bring him to a safe house in Richmond. Cruz then traveled to northern Virginia a second time to obtain the gun used in the shootings. From this evidence, the jury could infer that Cruz learned that Bernardez had shot Kuk and Beck, even if he was unaware of Aguilar Orantes' identity or role in the shootings.

12

Cruz focuses on Palacios' testimony that Cruz told him that Barrera was the shooter and that Barrera himself claimed to have been the shooter, arguing that this shows that Cruz did not knowingly act to help Bernardez avoid prosecution for the shootings. However, in weighing the evidence, the jury could reasonably have found it more believable that Cruz learned that Bernardez was the actual shooter through his many conversations with Bernardez and his trips to northern Virginia.

Cruz also argues that the government did not prove that he knew the gun he sold to Palacios was the gun used in the October 6 shootings. Cruz misrepresents one portion of Palacios' testimony in making this argument. According to Palacios' testimony, Cruz did not say "he wanted nothing to do with the gun used in any shooting" or complain "that he had been deceived in the past when dealing with guns that may have been used in crimes as it was not his desire to do so." Palacios testified under cross-examination that Cruz said he wanted clean guns to take to northern Virginia to exchange for guns that had been used by MS-13 in crimes. Cruz' only concern was that someone might sell him a gun that had been used in a crime under the pretense that it was a clean gun.

Cruz asserts that his statement to Palacios that one of the guns Cruz sold him was the gun "used in Monday's shooting" did not connect the gun to the October 6 shootings.

13

However, Palacios testified that Cruz consistently referred to the October 6 shootings as "Monday's shooting." Taken in context, it is clear that when Cruz referred to the gun he sold Palacios on November 1 as the gun used in "Monday's shooting," he meant it was the gun used on October 6, 2008. On balance, we conclude that the evidence was sufficient to support Cruz' convictions as an accessory after the fact.

Last, Appellants challenge the denial of their Rule 33 motion for a new trial. We review a district court's denial of a new trial motion for a new trial for abuse of discretion. United States v. Fulcher, 250 F.3d 244, 249 (4th Cir. 2001). To receive a new trial based on newly-discovered evidence, a defendant must show that: (1) the evidence is newly-discovered; (2) he has been diligent in uncovering it; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to the issues involved; and (5) the evidence would probably produce an acquittal. See id. Unless the defendant demonstrates all five of these factors, the motion should be denied. United States v. Chavis, 880 F.2d 788, 793 (4th Cir. 1989).

The district court correctly determined that the defendants were not entitled to a new trial based on information from Gordillo Portocarrero, a jailhouse snitch, that allegedly contradicted Sergio Amador's testimony about a murder he

14

committed, which was part of the government's evidence of MS-13's pattern of racketeering activity. Gordillo Portacarrero's information proved to be incorrect and thus did not impeach Amador's testimony at all. Thus, the information was not material and would not have produced an acquittal, even if Amador had been the only witness to testify about racketeering activity by MS-13, which he was not. Therefore, the district court did not abuse its discretion in denying the motion for a new trial.

We therefore affirm the convictions and the sentences imposed by the district court. We affirm the district court's denial of Appellants' motion for a new trial. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED