**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 10-4684**

---

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

PORFIRIO ORTA-ROSARIO,

        Defendant - Appellant.

---

**No. 10-4750**

---

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

KATHLEEN GIACOBBE,

        Defendant - Appellant.

---

Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Robert J. Conrad, Jr., Chief District Judge. (3:07-cr-00154-RJC-DSC-3; 3:07-cr-00154-RJC-DSC-2)

---

Submitted: December 29, 2011      Decided: March 13, 2012

---

Before NIEMEYER, AGEE, and WYNN, Circuit Judges.

---

Affirmed in part; vacated and remanded in part by unpublished per curiam opinion.

———————————

Angela Parrot, Acting Executive Director, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Ross H. Richardson, Peter Adolf, Assistant Federal Defenders; Scott H. Gsell, Charlotte, North Carolina, for Appellants. Anne Magee Tompkins, United States Attorney, Melissa L. Rikard, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Defendants Kathleen Giacobbe (Giacobbe) and Porfirio Orta-Rosario (Orta) were charged with conspiracy to distribute Schedule III and IV controlled substances without a legitimate medical purpose and outside the usual course of professional practice, numerous substantive counts of distribution, and aiding and abetting the same. Appellants were involved in an online prescription medication service. Appellants raise several challenges to their convictions, and Orta challenged his sentence.

Orta, a medical doctor, and Giacobbe first assert that the Controlled Substances Act (CSA) is impermissibly vague as applied to them in violation of the Fifth Amendment right to due process. The Appellants contend that there is no statutory definition of "legitimate medical purpose" or "usual professional practice." Appellants argue that the factors the Government relied on to demonstrate that their conduct was without a legitimate medical purpose and outside of usual professional practice were not sufficient to establish that an ordinary person would understand that their conduct was prohibited. They further contend that the Ryan Haight Act of 2008 (passed after their criminal conduct), 21 U.S.C.A. § 829(e) (West Supp. 2011) (the Act), includes a requirement for patients to see a medical professional in person before receiving a

3

prescription, and the absence of such a requirement prior to passage of the Act rendered the CSA impermissibly vague, and the rule of lenity should apply to void their convictions.

In order to prosecute the Defendants for distribution of controlled substances that Dr. Orta was authorized to prescribe, the Government must prove that the controlled substance was not prescribed only "for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 CFR § 1306.04(a). There are no statutory definitions of "legitimate medical purpose" or "usual course of professional practice." The CSA does not specifically define the range of acceptable medical practices. Gonzales v. Oregon, 546 U.S. 243, 260 (2006).

Nonetheless, in Gonzales, the Supreme Court stated that the CSA "bars doctors from using their prescription-writing powers as a means to engage in illicit drug dealing and trafficking as conventionally understood." Id. at 270. Further, we have held that "there are no specific guidelines concerning what is required to support a conclusion that an accused acted outside the usual course of professional practice. Rather, courts must engage in a case-by-case analysis of evidence to determine whether a reasonable inference of guilt may be drawn from specific facts." United States v. Singh, 54 F.3d 1182, 1187 (4th Cir. 1995). Several other Circuits have

4

explicitly ruled that the CSA and the regulations are not void for vagueness. See United States v. Birbragher, 603 F.3d 530 (8th Cir. 2010) (rejecting vagueness challenge in online pharmacy case with very similar facts); United States v. Lovern, 590 F.3d 1095, 1103 (10th Cir. 2009) (rejecting vagueness challenge by pharmacist in online pharmacy case with similar fact situation); United States v. DeBoer, 966 F.2d 1066, 1068-69 (6th Cir. 1992) (language of § 841(a) is not void for vagueness because it clearly defines a pharmacist's responsibilities); United States v. Rosenberg, 515 F.2d 190, 197-98 (9th Cir. 1974) (finding phrase "in the course of professional practice" has been in statutes since 1914 and courts have shown "ease and consistency" in interpreting phrase); United States v. Collier, 478 F.2d 268, 272 (5th Cir. 1973 ("in the usual course of professional practice" language not unconstitutionally vague). In light of the statute, regulation, and case law, we conclude that the Defendants had adequate notice that the www.youronlinedoctor.com (YOD) prescription service that they were involved in was unlawful. In addition, the jury found that the Defendants had knowledge and intent.

In 2008, Congress passed the Ryan Haight Online Pharmacy Consumer Protection Act of 2008, which went into effect on April 15, 2009. The Act provides "[n]o controlled substance that is a prescription drug . . . may be delivered, distributed,

5

or dispensed by means of the Internet without a valid prescription." 21 U.S.C.A. § 829(e). A "valid prescription" is defined as a prescription issued for a legitimate medical purpose in the usual course of professional practice by a practitioner who has conducted at least one in-person medical evaluation. Id.

The Appellants contend that because Congress amended the CSA after they operated YOD, the pre-Ryan Haight CSA was unconstitutionally vague as to whether it prohibited the conduct in this case. The Appellants also suggest that the rule of lenity requires that their convictions be reversed. Appellants do not have any case law to support their position. This same challenge has been rejected by the Second Circuit in Birbragher and in various district courts. See Birbragher, 603 F.3d at 490 (defendant's "reliance on the Online Pharmacy Act . . . was misplaced"); United States v. Quinones, 536 F. Supp.2d 267, 273 (E.D.N.Y. 2008) (although the Act requires a face to face meeting between patient and doctor, "it does not follow that the same conduct is not within the embrace of the current prohibition of distribution outside the usual scope of professional practice"); United States v. Lovin, 2009 WL3634194, *5 (S.D.Cal. Oct. 30, 2009) ("The fact that the Senate has passed a bill which would amend the CSA to explicitly prohibit the conduct at issue in this case does not invalidate the

6

government's prosecution of defendants under the existing provisions of the CSA").

As the Government argues, not only were there no physical examinations in this case, there were several other violations, including permitting non-medical personnel to write prescriptions with pre-signed blank prescription forms, questionable dosage amounts, and liberal prescription refills that were not based on legitimate medical purposes or based on professional practices. Because there is no ambiguity in the CSA or its application in this case, the rule of lenity does not apply. The Appellants' constitutional challenge to the CSA based on vagueness fails.

Next, the Appellants challenge the district court's denial of their motion for a mistrial. Before trial, the Appellants moved to exclude evidence of patient deaths allegedly related to receiving medication from the YOD enterprise as unfairly prejudicial and without sufficient evidence of causation. The court granted the motion and enjoined the Government from making any reference to the deaths. During the trial, the Government called Dr. Mark Romanoff to testify as an expert in the field of medical practice and pain management. The AUSA asked Dr. Romanoff if he had "an opinion as to whether the model used by Your Online Doctor constituted the legitimate practice of medicine?" Dr. Romanoff responded, "[i]t was not

7

the practice of medicine at all. . . . In fact, as we have seen, a lot of patients got into big trouble and some died because of this." Defense counsel objected immediately, and the court sustained the objection and informed the jury to "disregard completely the last statement of the witness."

At the conclusion of Dr. Romanoff's testimony, defense counsel moved for a mistrial on the ground of deliberate misconduct by the Government. The court denied the motion for a mistrial, finding that the prohibited testimony was inadvertent and the court had immediately instructed the jury to disregard it. The court gave an additional limiting instruction when the jury returned to the courtroom. The court recited the Government's question and Dr. Romanoff's answer referencing the deaths and then instructed the jury that "there's absolutely no evidence of any kind that any deaths were caused by the conduct of any people in this case. That being so, you are to completely disregard any comment about any such death."

We review the denial of a motion for mistrial for an abuse of discretion. United States v. Wallace, 515 F.3d 327, 330 (4th Cir. 2008); see also United States v. Dorlouis, 107 F.3d 248, 257 (4th Cir. 1997) ("[D]enial of a defendant's motion for a mistrial is within the sound discretion of the district court and will be disturbed only under the most extraordinary of circumstances."). In order to show such an abuse of discretion,

8

a defendant must show prejudice; no prejudice exists if the jury could make individual guilt determinations by following the court's cautionary instructions. Wallace, 515 F.3d at 330. To determine whether prejudice is present, the court "must evaluate whether there is a reasonable probability that the jury's verdict was influenced by the material that improperly came before it." United States v. Seeright, 978 F.2d 842, 849 (4th Cir. 1992) (internal quotation marks omitted).

We conclude that the district court did not abuse its discretion in denying the Appellants' motion for a mistrial. The court issued a curative instruction immediately after the objection and issued a second curative instruction that went so far as to say that there was "absolutely no evidence of any kind that any deaths were caused by the conduct of any people in this case." Further, one of the defendants, Christopher Otiko, was found not guilty on all counts. Therefore, the jury was able to make individualized determinations of guilt. See United States v. Dorsey, 45 F.3d 809, 817 (4th Cir. 1995). As the improper testimony did not influence the verdict, the district court did not abuse its discretion in denying the Appellants' motion for a mistrial.

The Appellants proffered a jury instruction on good faith as a defense to the charges. The Appellants' brief states that Orta's counsel requested that the following instruction be

given, based on this court's decision in United States v. McIver, 470 F.3d 550, 556 (4th Cir. 2006): "Good faith in this context means good intentions, and the honest exercise of professional judgment as to the patient's needs. It means that the defendant acted in accordance with what he reasonably believed to be proper medical practice."

The court determined that the best statement of the law was from United States v. Hurwitz, 459 F.3d 463, 476 (4th Cir. 2006). Consistent with Hurwitz, the district court instructed the jury that the Defendants could not be convicted if it found the Defendants acted in good faith. The court instructed, "[g]ood faith is not merely a doctor['s] sincere intention towards the people who come to see him, but rather it involves his sincerity in attempting to conduct himself in accordance with a standard of practice generally recognized and accepted in the United States."

"A district court commits reversible error in refusing to provide a proffered jury instruction only when the instruction (1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." United States v. Passaro, 577 F.3d 207, 221 (4th Cir. 2009) (internal quotation marks omitted). We

10

"review the district court's decision to give or refuse to give a jury instruction for abuse of discretion." Id.

In Hurwitz, the court found that a district court erred when it instructed a jury that it may not consider a physician's good faith when deciding whether to convict on a drug trafficking charge and held that, in a § 841 prosecution against a physician, the inquiry into the doctor's good faith in treating his patients is an objective one, rather than a subjective one. Hurwitz, 459 at 476-79. Here, the district court's instruction was properly based on objective good faith, and not Orta's subjective belief that he may have been acting in good faith. The district court's instruction did not confuse the standard of proof stating that it was beyond a reasonable doubt as to whether the Defendants acted without a legitimate medical purpose and outside the bounds of professional practice, reiterating that the Government had to prove that beyond the bounds of any legitimate practice was "exclusively criminal in nature." The court "describ[ed] the concept of medical malpractice and the civil standard of care before categorically stating that a criminal standard governed resolution of this case." McIver, 470 F.3d at 560.

Under these circumstances, we conclude that the court did not err in refusing to give the requested instruction and crafting its own good faith instruction. Even if Orta's

11

instruction had been a correct statement of the law, he failed to demonstrate that it was not substantially covered by the court's charge to the jury. See Passaro, 577 F.3d at 221. Moreover, while Orta argues that the failure to give the requested instruction seriously impaired his ability to conduct a defense, he was able to argue good faith to the jury. For these reasons, the district court did not err in issuing its good faith instruction.

Next, Appellants argue that the district court erred in instructing the jury on willful blindness. The element of knowledge in the crime of conspiracy may be satisfied by a showing that a defendant acted with willful blindness, as willful blindness is a form of constructive knowledge which "allows the jury to impute the element of knowledge to the defendant if the evidence indicates that he purposely closed his eyes to avoid knowing what was taking place around him." United States v. Schnabel, 939 F.2d 197, 203 (4th Cir. 1991). Because willful blindness serves as a proxy for knowledge, there is nothing inconsistent in the determination that a defendant knowingly was part of a conspiracy even where willfully blind to the conspiracy's existence and purpose. See McIver, 470 F.3d at 563-64 (noting that willful blindness is sufficient to establish knowledge of a conspiracy). "[A]ll that is necessary is evidence from which the jury could infer deliberate avoidance of

knowledge." United States v. Whittington, 26 F.3d 456, 463 (4th Cir. 1994). If the evidence supports actual knowledge and deliberate ignorance, a willful blindness instruction is proper. United States v. Ruhe, 191 F.3d 376, 384 (4th Cir. 1999).

Orta objected in the district court to the willful blindness instruction, arguing that the instruction should only be given sparingly where there is specific evidence that a defendant actively avoided learning of facts. Orta argued that the willful blindness instruction may lead the jury to convict on something less than knowledge and the specific intent element of the crime would be voided. The court denied the objection.

In his reply brief, Orta argues that a recent Supreme Court decision regarding the willful blindness instruction requires evidence of deliberate acts to avoid knowledge. See Global-Tech Appliances, Inc. v. SEB S.A., 131 S. Ct. 2060 (2011). Orta asserts that the Global-Tech Court held that "the defendant must take deliberate actions to avoid learning" of the fact of an illegality or violation and that this applies to criminal as well as civil willful blindness instructions. Id. at 2070.

However, even in light of this recent case, Orta's actions were deliberate and calculated to avoid knowledge of the illegal aspect of the enterprise. Orta actively ignored numerous signs that the YOD prescriptions were issued and filled

13

without a legitimate medical necessity and outside the usual course of professional practice. We therefore conclude that the court did not abuse its discretion in giving the willful blindness instruction. Passaro, 577 F.3d at 221 (standard of review).

Orta assigns error to the district court's denial of his motion for a four-level adjustment based on his minimal role in the offenses pursuant to U.S. Sentencing Guidelines Manual § 3B1.2 (2006). In reviewing the district court's calculations under the Guidelines, we "review the district court's legal conclusions de novo and its factual findings for clear error." United States v. Manigan, 592 F.3d 621, 626 (4th Cir. 2010) (internal quotation marks, alteration, and citation omitted). We will "find clear error only if, on the entire evidence, [we are] left with the definite and firm conviction that a mistake has been committed." Id. at 631 (internal quotation marks and citation omitted).

Under USSG § 3B1.2(a), a district court shall decrease the applicable offense level by four levels if the defendant was a minimal participant in the criminal activity. The Guidelines further provide that such a reduction is appropriate in a situation where the defendant is "among the least culpable of those involved in the conduct of the group." USSG § 3B1.2 cmt. n.4. In deciding whether the defendant played a minor or

14

minimal role, the "critical inquiry is thus not just whether the defendant has done fewer bad acts than his co-defendants, but whether the defendant's conduct is material or essential to committing the offense." United States v. Pratt, 239 F.3d 640, 646 (4th Cir. 2001) (internal quotation marks and citation omitted). The defendant bears the burden of demonstrating that he played a minor role in the offense by a preponderance of the evidence. United States v. Akinkoye, 185 F.3d 192, 202 (4th Cir. 1999).

The district court did not clearly err in refusing to apply this reduction in offense level. The district court found that Orta was the "without which factor" that allowed YOD to operate and distribute controlled substances to thousands of customers. Without Orta's photocopied signature and DEA number, the YOD business would not have authorized thousands of prescriptions. Orta clearly delegated medical decision-making to persons untrained and unlicensed in medical practice. The district court found that Orta's explanations were incredible and that he was one of the more culpable conspirators. His conduct was therefore "material or essential to committing the offense," and the court did not clearly err in rejecting the role adjustment.

Finally, Orta argues that the district court erred by requiring him to pay $1000 of his court appointed attorneys'

15

fees. Under the Criminal Justice Act, "[w]henever a United States magistrate judge or the court finds that funds are available for payment from or on behalf of a person furnished representation," the court may order that such funds be paid to the court-appointed attorney or the United States Treasury as a reimbursement for court-appointed representation. 18 U.S.C.A. § 3006A(f) (West Supp. 2011). Any order requiring the reimbursement of attorneys' fees under 18 U.S.C.A. § 3006A(f) must be based on a finding by the district court "that there are specific funds, assets, or asset streams (or the fixed right to those funds, assets or asset streams) that are (1) identified by the court and (2) available to the defendant for the repayment of the court-appointed attorneys' fees." United States v. Moore, 666 F.3d 313, 322 (4th Cir. 2012). The district court, not having the benefit of Moore, made no such findings in this case. For this reason, we vacate this portion of Orta's sentencing order only and remand for the court to reconsider in light of Moore.

We therefore affirm the convictions and Giacobbe's sentence and Orta's sentence with the exception of the portion of Orta's judgment ordering repayment of attorneys' fees. We dispense with oral argument because the facts and legal

contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED IN PART;
VACATED AND REMANDED IN PART
